

# 13 CV 2633

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BERKLEY INSURANCE COMPANY f/k/a SIGNET STAR REINSURANCE COMPANY,<br><br>    Petitioner,<br><br>v.<br><br>EXCALIBUR REINSURANCE CORPORATION, f/k/a PMA CAPITAL INSURANCE COMPANY, AS SUCCESSOR TO CALIBER ONE INDEMNITY COMPANY,<br><br>    Respondent. | Civil Action No.: _____<br><br><br>*Filed Under Seal*  |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## BERKLEY INSURANCE COMPANY'S
## PETITION TO CONFIRM ARBITRATION AWARD

Respectfully submitted by:

Daniel L. FitzMaurice (# DF6096)
dlfitzmaurice@daypitney.com
Day Pitney LLP
242 Trumbull St.
Hartford, Connecticut 06103-1212
(860) 275-0100
(860) 275-0343 (fax)

Its Attorneys

## I.   INTRODUCTION

The Petitioner, Berkley Insurance Company formerly known as Signet Star Reinsurance Company ("Berkley"), respectfully submits this Memorandum of Law in support of its Petition to confirm an arbitration award that a three-member arbitration panel issued on April 8, 2013. The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), governs this petition.  Under the FAA, courts apply a "highly deferential" standard when considering motions to confirm arbitral awards.  Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004).  Indeed, even if this Court were to disagree with arbitrators' conclusion (and there is no reason to believe that would happen), the award should still be confirmed as long as "there is a *barely colorable justification* for the outcome reached."  Id. (emphasis added; citations and internal quotation marks omitted).  As explicated below, the Court should confirm the award that the arbitrators issued in this case.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This dispute arose between two companies that entered into a series of four reinsurance[1] contracts over a decade ago.  Caliber One Insurance Company, the predecessor to the Respondent, Excalibur Reinsurance Corporation ("Excalibur"), purchased reinsurance from Signet Star Reinsurance Company ("Signet Star").  Signet Star subsequently changed its name to Berkley Insurance Company.  For simplicity's sake, this memorandum will refer to the current

---

[1] "Reinsurance is insurance that is purchased by insurance companies, and it often serves as a method of mitigating their exposure to risk."  Acumen Re Mgmt. Corp. v. General Sec. Nat'l Ins. Co., No. 09 CV 01796 (GBD), 2012 U.S. Dist. LEXIS 127809 at *2 (S.D.N.Y. Sept. 7, 2012).

names of the two parties to the reinsurance agreements.  Thus, in the transactions at issue,

Excalibur was the reassured or "cedent,"[2] and Berkley was the reinsurer.

The four reinsurance contracts ("Treaties")[3] were in effect during the following periods:

- AR 10373:  1/1/98 – 5/31/99 (the "1998 Treaty");

- AR 10373:  6/1/99 – 5/31/00 (the "1999 Treaty");

- AR 10373:  6/1/00 – 5/31/01 (the "2000 Treaty"); and

- AR 10373:  6/1/01 – 5/31/02 (the "2001 Treaty").

(collectively, the "Treaties").  (Attached to Raval Dec. as Exhs. 1 through 4, respectively.)

Section A of the Treaties, the portion at issue, addressed primary casualty business that

Caliber One issued.  (Ex. 1 at 8, Exs. 2 and 3 at 5, Ex. 4 at 6.)

Essentially, the same arbitration clause appeared in each of the Treaties.  It provides in

part as follows:

> As a condition precedent to any right of action under this Agreement, any dispute
> (whether during the currency of this Agreement or after expiration or termination
> of this Agreement) between the Company and any Reinsurer arising out of or in
> connection with this Agreement, including its formation or actual validity, will be
> submitted to the decision of a board of arbitration (hereinafter called the "board")

---

[2] "Insurers--who are also known as 'cedents' with respect to their reinsurance
relationships--cede risk to reinsurers, along with a portion of the premiums." Travelers Cas. &
Sur. Co. v. Gerling Global Reinsurance Corp. of Am., 419 F.3d 181, 183 (2d Cir. 2004) (citation
omitted).

[3] As this Court explained in Unigard Sec. Ins. Co. v. North River Ins. Co., 762 F. Supp.
566 (S.D.N.Y. 1991), aff'd in part, rev'd in part on other grounds, 4 F.3d 1049 (2d Cir. 2003):

> There are two basic types of reinsurance policies -- facultative and treaty. . . .  In
> facultative reinsurance, a ceding insurer purchases reinsurance for a part, or all, of
> a single insurance policy. Treaty reinsurance covers specified classes of a ceding
> insurer's policies.

762 F. Supp. at 572 n.2 (citation omitted).

composed of two arbitrators and an umpire meeting at a site in the city in which
the Company's home office is located, unless some other site is mutually agreed
by the parties . . . . All time limitations stated in this Article may be amended by
mutual consent of the parties, and will be amended automatically to the extent
made necessary by any circumstance beyond the control of the parties.

\* \* \* \*

The decision by the majority of the members of the board will be in writing and
will be final and binding upon the parties. The board is empowered to grant
interim relief as it may deem appropriate. Either the claimant or the respondent
may apply to the United States District Court in the Company's state of domicile
for an order confirming the award; a judgment of such court will thereupon be
entered on the award. If such an order is issued, the party against whom
confirmation is sought will pay the attorneys' fees and court costs the applying
party incurs in pursuing the order.

(Ex. 1 at 20-21, 23, Ex. 2 at 13-14, Ex. 3 at 14-16, and Ex. 4 at Ex. 15-16.) Although the

Treaties called for the arbitration to take place in Pennsylvania, the site of Excalibur's home

office, it also expressly permitted the parties to agree upon a different location – as they did in

this instance. (See Raval Dec., ¶ 9; Ex. 5.)

On July 27, 2009, Excalibur demanded arbitration against Berkley to recover

$2,818,768.62 that it billed under the Treaties, interest, costs, attorneys' fees, and punitive

damages, and for a declaration by the arbitration panel as to Berkley's future obligations under

the Treaties for balances involving the same or similar issues. (Id., ¶ 10; Ex. 6.) The amount in

dispute increased as Excalibur billed additional amounts under the Treaties for balances

involving the same or similar issues. (Id. ¶ 10.) On August 24, 2009, Berkley issued a counter-

demand for arbitration. (Id., ¶ 11; Ex. 7.) Among other things, Berkley requested that "the Panel

declare [that Excalibur's] new method of combining multiple losses into one retention violates

the parties' agreements, as [do Excalibur's] attempts to force Berkley to pay sums not owing

under the reinsurance agreements." (Id.) By letter dated June 3, 2011, Berkley amended its

counter-demand to add a claim based on Excalibur's failure to reimburse Berkley for a claim

-4-

unrelated to the disputed aggregate billings, i.e., the Transcore Claim. (Id., ¶ 12; Ex. 8.) Thus, a key issue in dispute concerned whether and, if so, under what circumstances Excalibur could properly combine or "aggregate" payments that it made for underlying claims in order to satisfy its reinsurance retention of "a loss of $500,000 each and every loss, each coverage part, each insured."[4]  (Ex. 1 at 8, Ex. 2 at 5, Ex. 3 at 5.)

The arbitration panel ("Panel"), which consisted of three members, conducted evidentiary hearings in Atlanta on June 12, 2012, Los Angeles on September 20, 2012, and New York on October 1, 2, 3, 4, and 5, 2012. (Raval Dec., ¶ 13; Ex. 9 at 2-3.)  On April 8, 2013, the Panel issued its final award ("Final Award").  (Ex. 9.)

The Final Award provides rulings in two parts:  (a) section A sets forth the Panel's declarations with respect to the parties' disputes over the meaning of certain provisions in the Treaties, including provisions regarding aggregation of claim payments; and (b) section B provides the Panel's rulings with regard to disputed billings that Excalibur submitted to Berkley and with respect to the proper method for Excalibur to bill in the future.  The Final Award then provided:

> All other claims, defenses, and requests asserted by the parties in this arbitration are hereby denied with prejudice.
>
> This Award is final and binding on all parties to this arbitration as to all issues before the Panel.

Thus, the Final Award expressly disposed of all of the issues that the parties presented in this arbitration.

---

[4] In the 2001 Treaty, Excalibur retained "a loss of $500,000 each loss, each coverage, each insured." (Ex. 4 at 6.)

III.   **ARGUMENT**

    A.   <u>**The Court Should Confirm the Award**</u>

        1.   **The FAA applies to this petition to confirm**

The Federal Arbitration Act, 9 U.S.C. §§ 1 <u>et seq.</u> ("FAA") prescribes three "criteria for jurisdiction:" "(1) there is a written arbitration agreement; (2) diversity provides an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce." <u>Acequip Ltd. v. Am. Eng'g Corp.</u>, 315 F.3d 151, 154 (2d Cir. 2003). This dispute meets all three criteria. A written agreement to arbitrate appears in each of the four Treaties. (Exhs. 1 - 4, Arbitration article.) Diversity jurisdiction exists, because Excalibur is a citizen of Pennsylvania and Berkley is a citizen of Delaware and Connecticut. The underlying transaction involves interstate commerce, because it consisted of four reinsurance contracts between an insurer incorporated in Pennsylvania with its principal place of business in Pennsylvania (Excalibur's predecessor, Caliber One) and a reinsurer incorporated in Delaware with its principal place of business in Connecticut (Signet Star n/k/a Berkley).[5] Accordingly, the FAA governs this petition to confirm.

        2.   **The Petition complies with the FAA's timing and venue requirements**

Under the FAA, the party seeking confirmation must file a timely petition in the proper Court. 9 U.S.C. § 9. The FAA's timing and venue provisions for confirmation are liberal. A party seeking to confirm may file a petition "any time within one year of a final award." <u>Id.</u> Moreover, in <u>Cortez Byrd Chips v. Bill Harbert Constr. Co.</u>, 529 U.S. 193 (2000), the Supreme Court unanimously held that the venue provisions in the FATA with respect to a motion to

---

    [5] At the time the first Treaty was executed, Signet Star's principal place of business was in New Jersey; it later changed its principal place of business to Connecticut. (Raval Dec., ¶ 12.)

confirm, vacate, or modify a final award are "permissive, permitting such a motion either where

the award was made or in any district proper under the general venue statute, [28 U.S.C.

§1391(a)(2)]." Id. at. 195. "[A]n arbitration award is 'made' in the district where the hearing is

held, not the place from which the award was written or mailed." NGC Network Asia, LLC v.

Pac Pac. Group Int'l, Inc., No. 09 Civ. 8684 (PGG), 2010 U.S. Dist. LEXIS 99062 at *9

(S.D.N.Y. Sept. 17, 2010) (quoting Warnaco, Inc. v. Sincere Garment & Sporting Goods, Mfg.,

Co., No. 90 Civ. 2854 (RJW), 1990 U.S. Dist. LEXIS 8603, at *6-8 (S.D.N.Y. July 12, 1990).)

In this case, venue is proper in this Court, because the arbitration award was made in New York,

New York. Accordingly, Berkley's petition to confirm complies with the timing and venue

provisions of the FAA.

### 3.    The Final Award readily meets the standards for confirmation

As the Second Circuit has explained:

> Normally, confirmation of an arbitration award is a summary proceeding that
> merely makes what is already a final arbitration award a judgment of the court,
> . . . and the court must grant the award unless the award is vacated, modified, or
> corrected. 9 U.S.C. § 9. The arbitrator's rationale for an award need not be
> explained, and the award should be confirmed if a ground for the arbitrator's
> decision can be inferred from the facts of the case, . . . Only a barely colorable
> justification for the outcome reached by the arbitrators is necessary to confirm the
> award. . . . A party moving to vacate an arbitration award has the burden of proof,
> and the showing required to avoid confirmation is very high.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotations and

citations omitted). The Final Award easily meets these standards.

The parties' central dispute concerned whether and, if so, when Excalibur could

aggregate claim payments in order to satisfy its retention. A "retention" in a reinsurance contract

operates similarly to a deductible in an insurance policy in that it specifies an amount that the cedent must retain before a loss triggers the reinsurance coverage.[6] The Treaties state that Excalibur must first retain "a loss of $500,000 each and every loss, each coverage part, and each insured."[7] (Ex. 1 at 8, Ex. 2 at 5, Ex. 3 at 5.) The Treaties defined "loss" as "the amount of any settlement, award, or judgment paid by [Excalibur] . . . ." (Ex. 1 at 6, Ex. 2 at 4, Ex. 3 at 4, Ex. 4 at 5.) Moreover, the Treaties expressly incorporated the provisions of the underlying primary policies by providing that "[a]ll reinsurance for which Reinsurers will be obligated . . . will be subject to the same terms . . . as the respective policies of the [cedent] to which this Agreement applies . . . ." (Exhs. 1 - 4 at 2.) The primary policies at issue allowed for aggregation of loss on a per occurrence basis. They provided: "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' . . . ." (See, e.g., Ex. 10 at EXC 14025.) Thus, the arbitrators' interpretation of the Treaties[8] comported fully with the terms of the Treaties and underlying policies.

Moreover, confirmation of the declaratory aspect of the Final Award is further warranted due to the highly deferential standard of review applicable to the confirmation with regard to issues of contractual interpretation. See, e.g., Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,

---

[6] See, e.g., Emplrs. Reinsurance Corp. v. Mid-Continent Cas. Co., 358 F.3d 757, 760 (10th Cir. 2004); Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 222 (2d Cir. 2000).

[7] In the 2001 Treaty, the retention was worded slightly differently: "a loss of $500,000 each loss, each coverage, each insured." (Ex. 4 at 6.)

[8] The Treaties broadly granted the arbitrators authority to resolve "any dispute (whether during the currency of this Agreement or after expiration or termination of this Agreement) between the [cedent] and any Reinsurer arising out of or in connection with this Agreement, including its formation or actual validity . . . ." (Ex. 1 at 20, Ex. 2 at 13, Ex. 3 at 14, and Ex. 4 at Ex. 15.)

304 F.3d 200, 216 n.10 (2d Cir. 2002) ("our standard of review [with respect to an arbitrator's

interpretation of the parties' agreement] constrains us to affirm an arbitrator's judgment even if .

. . convinced he committed serious error.") (Internal quotations and citation omitted.)

The second aspect of the Final Award consists of the arbitrators' conclusion that

Excalibur failed to submit sufficient evidence to establish that its billings comported with the

form of aggregation that the panel found permissible – namely, the combination of payments

made for losses arising out of a single occurrence.  (See, e.g., Ex. 9, ¶ B-1.)  This assessment of

the evidence falls squarely within the arbitrators' authority.  Indeed, "[i]n addition to not

reviewing for gross or clear factual or legal error, courts also do not review arbitration awards for

sufficiency of the evidence."  Holden v. Deloitte & Touche LLP, 390 F. Supp. 2d 752, 757

(N.D. Ill. 2005) (citation omitted); see also Vaughn v. Leeds, No. 04 Civ. 8391 (DLC), 2007 U.S

Dist. LEXIS 85587 at *12-*13 (S.D.N.Y. Nov. 19, 2007) ("To the extent [a party seeking to

vacate an award offers an argument] that turns on the sufficiency of the evidence, evidentiary

determinations cannot form the basis for vacatur of an arbitration award.") (Citations omitted).

Accordingly, the arbitrators' conclusions regarding the insufficiency of Excalibur's evidence

also warrant confirmation.

**B.      The Court Should Award to Berkley Its Attorneys' Fees and Costs Incurred
in Pursuing this Order Confirming the Award.**

Pursuant to the terms of the Treaties, the Court should also order Excalibur to pay

Berkley's attorneys' fees and costs incurred in pursuing this Order confirming the Award.  In

particular, the Treaties state in pertinent part as follows:

> Either the claimant or the respondent may apply to the United
> States District Court in the Company's state of domicile for an
> order confirming the award; a judgment of such court will
> thereupon be entered on the award.  If such an order is issued, the

> party against whom confirmation is sought will pay the attorneys'
> fees and court costs the applying party incurs in pursuing the order.

(Ex. 1 at 23, Ex. 2 at 14, Ex. 3 at 15-16, Ex. 4 at 16.) Berkley, the respondent to Excalibur's

arbitration demand and the claimant for its own counter-arbitration demand, requests that the

Court enter judgment confirming the Award.  As discussed above, the Court should grant

Berkley's request for an Order confirming the Award.  Accordingly, pursuant to the parties'

agreement under the Treaties, upon issuing the Order confirming the Award, the Court should

also award Berkley its attorneys' fees and court costs incurred in pursuing the Order.

**IV.    Conclusion.**

For the foregoing reasons, Berkley respectfully requests that the Court enter an order

confirming the arbitration award that Berkley attached to its Petition as Exhibit F thereto; and

further order Excalibur to pay Berkley its attorneys' fees and court costs incurred in pursuing the

Order confirming the Award.

Respectfully submitted,

BERKLEY INSURANCE COMPANY f/k/a
Dated:   Hartford, Conn.                SIGNET STAR REINSURANCE COMPANY,
         April 22, 2013                 Petitioner,

By _____

Daniel L. FitzMaurice (# DF6096)
dlfitzmaurice@daypitney.com
Day Pitney LLP
242 Trumbull St.
Hartford, Connecticut 06103-1212
(860) 275-0100
(860) 275-0343 (fax)
Its Attorneys